IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HYUNDAI CONSTRUCTION EQUIPMENT U.S.A., INC., an Illinois Corporation,<br><br>    Plaintiff,<br><br>v.<br><br>CHRIS JOHNSON EQUIPMENT, INC., a Michigan Corporation,<br><br>    Defendant. | )<br>)<br>)<br>)  CASE No. 06CV3238<br>)  JUDGE LEINENWEBER<br>)  MAGISTRATE JUDGE MASON<br>)<br>)<br>)<br>) |

**ANSWER TO AMENDED COMPLAINT FOR PRELIMINARY INJUNCTION,
PERMANENT INJUNCTION AND FURTHER RELIEF**

Defendant, Chris Johnson Equipment, Inc., a Michigan corporation ("CJ"), for its answer to the Amended Complaint of plaintiff, Hyundai Construction Equipment U.S.A., Inc. ("Hyundai USA"), states as follows:

1.  This action stems from CJ's sales and marketing of Hyundai "grey market" heavy construction equipment – <u>e.g.</u>, machines manufactured by Hyundai but meant for sale in countries other than the United States, that contain counterfeit and obliterated serial numbers, and are not covered under warranty by Hyundai in the United States (hereafter referred to as "Grey Market Machines" or "Grey Market Equipment"). In addition, upon information and belief, the Grey Market Machines CJ has sold in the United States often do not meet federal environmental or safety requirements, such as cab roll-over protection for the operator, because the countries which they Grey Market Equipment is destined for do not have as stringent environmental and safety requirements as in the United States.

**ANSWER:** CJ admits that this action purports to stem from its sales and marketing of so-called "grey market" Hyundai heavy construction equipment. CJ denies all of the remaining allegations of Paragraph 1.

2.  Although not covered under warranty in the United States, CJ has knowingly sold and continues to attempt to knowingly sell, to unsuspecting consumers, Grey Market Machines as "new" and/or "slightly used" equipment meant for sale in the

United States and covered under warranty in this county, when, in fact, the Grey Market Equipment is not covered under warranty in the United States.

**ANSWER:** CJ denies all of the allegations of Paragraph 2.

3. As a result of CJ's continued sale of Grey Market Machines, Hyundai U.S.A. has suffered and will continue to suffer irreparable harm to its goodwill and reputation with both its customers and its authorized dealers, for which there is no adequate remedy at law.

**ANSWER:** CJ denies all of the allegations of Paragraph 3.

4. Despite Hyundai's U.S.A.'s attempted requests, CJ refuses to cease its unauthorized and illegal conduct.

**ANSWER:** CJ denies all of the allegations of Paragraph 4.

5. Therefore, Hyundai U.S.A. brings this action against CJ under Section 43(a) of the Lanhan Act, Illinois statute, and common law.

**ANSWER:** CJ admits that Hyundai USA purports to bring this matter pursuant to Section 43(a) of the Lanham Act, Illinois law and common law. CJ denies that Hyundai USA is entitled to do so.

## PARTIES, JURISDICTION AND VENUE

6. Plaintiff Hyundai U.S.A. is an Illinois corporation with its principal place of business in Elk Grove Village, Illinois, Hyundai U.S.A., under an exclusive agreement with its parent company (Hyundai Korea) sells and markets heavy construction equipment (i.e., excavators and wheel loaders) in all 50 states and Canada. Under Hyundai U.S.A.'s exclusive agreement with Hyundai Korea, only dealers that enter into authorized dealership agreements with Hyundai U.S.A. may directly sell new Hyundai equipment (i.e., equipment with less than 100 hours of running time).

**ANSWER:** CJ admits that Hyundai USA is an Illinois corporation. It is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 6, therefore it denies them.

7. Upon information and belief, Defendant CJ is a Michigan Corporation with

its principal place of business in Macomb Township, Michigan, which sells and markets heavy construction equipment (including Grey Market Machines) throughout the United States, including Illinois, using the telephone, U.S. mail, facsimile, and its website. CJ is owned, operated and controlled by Chris Johnson.

**ANSWER:** Admitted.

8. This Court has jurisdiction over this matter, 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, 1338, and 1367.

**ANSWER:** Admitted.

9. Jurisdiction is proper in Illinois, in accordance with § 2-209 of the Illinois Code of Civil Procedure, 735 ILCS 5/2-209, because: (A) on at least two occasions, CJ attempted to sell Grey Market Machines to Illinois citizens and/or businesses and in the course of doing so, made telephone calls to Illinois and sent facsimiles to Illinois residents and businesses; and (B) CJ does business in Illinois because it markets and sells heavy construction equipment (including Grey Market Machines) to Illinois residents and corporations on a continuous basis through direct marketing via telephone and facsimile, placing advertisements in publications with circulation in Illinois, and through CJ's website.

**ANSWER:** Admitted.

10. Venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391.

**ANSWER:** Admitted.

## BACKGROUND

### CJ's Attempted Grey Market Sales in Illinois

11. On information and belief, CJ has attempted to sell and continues to try and market Grey Market Equipment to Illinois citizens and businesses. In so doing CJ solicited the Illinois citizens and corporations using the telephone and sent facsimiles quoting prices of Grey Market Equipment to Illinois.

**ANSWER:** Admitted.

12. For example, in or around July of 2005, Chris Johnson of CJ telephoned an Illinois business and offered to sell it a Grey Market Machine that Mr. Johnson stated was "new." In response to a request for a serial number so the Illinois customer could arrange for bank financing of the machine, Mr. Johnson offered to give him a serial

number for a different machine.

**ANSWER:**   CJ denies all of the allegations of Paragraph 12.

13.   Subsequently, in or around May of 2006, using the telephone and a written facsimile offer, CJ attempted to sell an Illinois citizen a Grey Market Machine. According to CJ, it had 12 "factory demo" machines from Korea, which could be "touched up to look new."

**ANSWER:**   CJ denies all of the allegations of Paragraph 13.

14.   In both of the above cases, CJ demanded a 10% non-refundable down payment and offered to ship the Grey Market Machines to Illinois.

**ANSWER:**   CJ denies all of the allegations of Paragraph 14.

15.   Neither of the above two sales were finalized because the Illinois citizens became suspicious the CJ was pushing Grey Market Equipment based on the low price and statements from CJ.

**ANSWER:**   CJ denies all of the allegations of Paragraph 15.

16.   On information and belief, Hyundai U.S.A. believes that CJ has sold and continues to try and sell Grey Market Machines to Illinois citizens and corporations for use in Illinois.

**ANSWER:**   CJ is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 16, therefore it denies them.

## CJ Knowingly Sells Grey Market Equipment Throughout the United States

17.   In addition to the above attempted Illinois sales, on information and belief, CJ has knowingly sold and marketed Grey Market Machines as "new" and/or "slightly used" equipment meant for sale in the United States and covered under warranty in this country, when in fact the Grey Market Equipment was not covered under warranty in the United States because the equipment was designed and meant to be sold and used in a foreign country (e.g., Korea or China).

**ANSWER:**   CJ admits that it sold and marketed as "new," "unused" or "demo" so-called "grey market" machines with engines covered under warranty by Cummins

4

Engine as it was legally entitled to do. It denies all of the remaining allegations of Paragraph 17.

18. Hyundai U.S.A. learned of these sales after the purchasers of the Grey Market Equipment took the machines to authorized Hyundai U.S.A. dealers for repairs, which the owners believed to be covered under warranty. When the dealer entered the serial number listed on the Grey Market Machines in the Hyundai U.S.A. database of legitimate machines covered under warranty in the United States, the dealers learned that the serial numbers on the Grey Market Equipment were counterfeit and actually belonged to legitimate equipment manufactured for sale in the United States and covered under warranty.

**ANSWER:** CJ is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 18, therefore it denies them.

19. Upon information and belief, when questioned about the source of the Grey Market Machines, the owners appeared to have unknowingly purchased the Grey Market Equipment from CJ at a steep discount, as compared to legitimate Hyundai U.S.A. machines, which are covered under warranty.

**ANSWER:** CJ is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 19, therefore it denies them.

20. Upon learning of these Grey Market Machines, the dealers contacted Hyundai U.S.A.'s corporate offices in Illinois.

**ANSWER:** CJ is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 20, therefore it denies them.

21. As of the date of the filing of this Complaint. Hyundai U.S.A. has learned that CJ has sold and attempted to sell Grey Market Machines throughout the United States, including California, South Carolina, Florida, Oklahoma, Wisconsin, and Illinois.

**ANSWER:** CJ is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 21, therefore it denies them.

22. Upon information and belief; the machine located in Florida was actually owned by Chris Johnson, the owner and operator of CJ.

**ANSWER:**   CJ is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 22, therefore it denies them.

23.   On information and belief, CJ knowingly altered the serial numbers (or at least knew of the altered serial numbers) in an attempt to hide, from consumers and Hyundai U.S.A., the fact it was selling Grey Market Equipment not covered under warranty in the United States.

**ANSWER:**   CJ denies all of the allegations of Paragraph 23.

24.   After learning that CJ was the source of the Grey Market Machines, Hyundai U.S.A. sent a written demand that CJ cease and desist selling and/or advertising Grey Market Equipment.

**ANSWER:**   CJ admits that Hyundai USA has sent it a written demand to cease and desist from selling and/or advertising Hyundai equipment. CJ is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 24, therefore it denies them.

25.   Disregarding this demand, CJ has continued to sell, market, and advertise Grey Market Machines throughout the United States, including in Illinois.

**ANSWER:**   CJ admits that it continues to sell, market and advertise so-called "grey market" machines throughout the United States, as it is legally entitled to do. It denies all of the remaining allegations of Paragraph 25.

**Effects of Selling Grey Market Equipment**

26.   Hyundai U.S.A., which sells machines throughout the United States, has spent millions of dollars to create and ensure continued goodwill and loyalty among its customers and authorized dealers.

**ANSWER:**   CJ is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 26, therefore it denies them.

27.   To achieve goodwill and loyalty with its customers, Hyundai U.S.A.

6

expends considerable resources to ensure the quality of its products, in part by using serial numbers to track and perform repairs under warranty and product recalls. Additionally, customers in the United States rely on the assumption that the Hyundai equipment that they are purchasing is covered under warranty in the United States and is manufactured pursuant to strict safety and regulatory standards in the United States.

**ANSWER:** CJ is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 27, therefore it denies them.

28. In addition to having counterfeit serial numbers and not being covered under warranty in the United States, upon information and belief, the Grey Market Machines manufactured pursuant to strict safety and regulatory standards in the United States because they are produced to be sold and used in foreign countries with less stringent safety and regulatory standards.

**ANSWER:** CJ cannot determine what is intended to be alleged by Paragraph 28, therefore it denies all of the allegations.

29. By selling Grey Market Machines — that have counterfeit serial numbers, are not warranted in the United States, and not manufactured to standards required in the United States -- as Hyundai U.S.A. equipment, which is warranted and meets all federal safety regulations, CJ creates a strong likelihood of confusion among Hyundai U.S.A.'s customers, which has an adverse economic impact, not only on Hyundai U.S.A., but also Hyundai U.S.A.'s consumers across the United States, including Illinois, who on information and belief have purchased Grey Market Machines from CJ.

**ANSWER:** CJ denies all of the allegations of Paragraph 29.

30. Similarly, to achieve goodwill and loyalty with its authorized dealers, Hyundai U.S.A. works hard to set fair prices, which are based in part on the cost of service under the warranty. Because CJ's Grey Market Equipment is not covered under warranty in the United States, CJ is able to price the Grey Market Machines well below the price that Hyundai U.S.A.'s authorized dealers are able to charge. As a result, CJ's conduct injures not only Hyundai U.S.A. and its customers but also Hyundai U.S.A.'s authorized dealers throughout the United States, who loose a sale every time CJ knowingly sells another Grey Market Machine at below market prices.

**ANSWER:** CJ is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 30, therefore it denies them.

31. In addition, knowing that CJ can sell Grey Market Machines below the cost

that Hyundai U.S.A.'s authorized dealers can purchase legitimate machines from Hyundai U.S.A., CJ has attempted to entice current Hyundai U.S.A. authorized dealers to break their relationship with Hyundai U.S.A., selling legitimate equipment, and instead buy Grey Market Machines exclusively from CJ.

**ANSWER:** CJ denies all of the allegations of Paragraph 31.

32. Accordingly, as a result of CJ's continued sale of Grey Market Machines, Hyundai U.S.A. has suffered and will continue to suffer irreparable harm to its goodwill and reputation with both its customers and its authorized dealers, for which there is no adequate remedy at law. Moreover, this harm will have a negative effect on interstate commerce as Hyundai U.S.A.'s machines are sold across the United States.

**ANSWER:** CJ denies all of the allegations of Paragraph 32.

## COUNT I - FEDERAL UNFAIR COMPETITION

33. Hyundai U.S.A. realleges and incorporates the above paragraphs as fully set forth herein.

**ANSWER:** CJ realleges its answers to Paragraphs 1-32 as and for its answer to Paragraph 33.

34. CJ's knowing and unauthorized sales and attempted sales of Grey Market Machines, as legitimate Hyundai U.S.A. equipment, to unsuspecting consumers constitute a false designation of origin and false descriptions and representations, which is a violation of Section 43(a) of the Lanham Act, 15 US.C. § 1125(a).

**ANSWER:** CJ denies all of the allegations of Paragraph 34.

35. In direct violation of Section 43(a), CJ, by its Grey Market sales and advertising, is unfairly competing with Hyundai U.S.A. and its authorized dealers, creating a substantial likelihood of confusion and causing mistake and deception in consumers' minds because the Grey Market Machines, although physically similar to legitimate Hyundai equipment, have counterfeit serial numbers, are not covered under warranty in the United States, and are not manufactured pursuant to United States safety or environmental regulations, and thus are materially different from legitimate Hyundai U.S.A. machines, which have warranty protection, correct and legitimate serial numbers, and meet or exceed all federal safety requirements.

**ANSWER:** CJ denies all of the allegations of Paragraph 35.

36. As a result of CJ's continued sales of Grey Market Machines, Hyundai U.S.A. has suffered and will continue to suffer irreparable harm to its goodwill and reputation with both its customers, who confuse the Grey Market Machines for legitimate warranted Hyundai equipment, and its authorized dealers, whose prices CJ is able to undercut by fraudulently selling Grey Market Machines not warranted by Hyundai.

**ANSWER:** CJ denies all of the allegations of Paragraph 36.

37. Hyundai U.S.A. has no adequate remedy at law for the above immediate and continuing harm. Moreover, this harm will have a negative effect on interstate commerce as Hyundai U.S.A.'s machines are in all 50 states, including Illinois.

**ANSWER:** CJ denies all of the allegations of Paragraph 37.

WHEREFORE, CJ prays for entry of judgment in its favor and against Hyundai USA dismissing Count I of the Amended Complaint.

### COUNT II - COMMON LAW TRADEMARK INFRINGEMENT

38. Hyundai U.S.A. realleges and incorporates the above paragraphs as fully set forth herein.

**ANSWER:** CJ realleges its answers to Paragraphs 1-37 as and for its answer to Paragraph 38.

39. CJ's knowing and continued unauthorized sales and attempted sales of Grey Market Machines, as legitimate Hyundai U.S.A. equipment to unsuspecting consumers, constitute common law trade name and trademark infringement.

**ANSWER:** CJ denies all of the allegations of Paragraph 39.

40. CJ's sale and continued sale of Grey Market Machines has created a substantial likelihood of confusion and caused mistake and deception in consumers' minds because the Grey Market Machines, although physically similar to legitimate Hyundai U.S.A. equipment, have counterfeit serial numbers and are not covered under warranty in the United States and thus are materially different from legitimate Hyundai U.S.A. machines, which have warranty protection and correct and legitimate serial numbers.

**ANSWER:** CJ denies all of the allegations of Paragraph 40.

41.   As a result of CJ's continued sales of Grey Market Machines, Hyundai U.S.A. has suffered and will continue to suffer irreparable harm to its goodwill and reputation with both its customers, who confuse the Grey Market Machines for legitimate warranted Hyundai equipment, and its authorized dealers, whose prices CJ is able to undercut by fraudulently selling Grey Market Machines not warranted by Hyundai.

**ANSWER:**   CJ denies all of the allegations of Paragraph 41.

42.   Hyundai U.S.A. has no adequate remedy at law for the above immediate and continuing harm. Moreover, this harm will have a negative effect on interstate commerce as Hyundai U.S.A. sells machines in all 50 states, including Illinois.

**ANSWER:**   CJ denies all of the allegations of Paragraph 42.

WHEREFORE, CJ prays for entry of judgment in its favor and against Hyundai USA dismissing Count II of the Amended Complaint.

## COUNT III - FEDERAL DILUTION

43.   Hyundai U.S.A. realleges and incorporates the above paragraphs as fully set forth herein.

**ANSWER:**   CJ realleges its answers to Paragraphs 1-42 as and for its answer to Paragraph 43.

44.   The Hyundai and Hyundai U.S.A. trade name and mark are "famous" as defined in 15 U.S.C. 1125(c).

**ANSWER:**   CJ is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 44, therefore it denies them.

45.   In violation of 15 U.S.C. § 1125(c), CJ's knowing and willful sales and attempted unauthorized sales of Grey Market Machines to unsuspecting consumers has injured Hyundai U.S.A.'s reputation and diluted the distinctive quality of Hyundai U.S.A.'s trade name and mark. Hyundai U.S.A. sells and markets its machines in part based on a comprehensive warranty package, which does not apply to the Grey Market Machines.

**ANSWER:**   CJ denies all of the allegations of Paragraph 45.

46. Although physically similar to legitimate Hyundai equipment, have counterfeit serial numbers and are not covered under warranty in the United States and thus are materially different from legitimate Hyundai U.S.A. machines, which have warranty protection and correct and legitimate serial numbers.

**ANSWER:** CJ denies all of the allegations of Paragraph 46.

47. As a result of CJ's continued sales of Grey Market Machines, Hyundai U.S.A. has suffered and will continue to suffer irreparable harm to its reputation and dilution of the distinctive quality of Hyundai U.S.A.'s trade name and mark with both its customers, who confuse the Grey Market Machines for legitimate warranted Hyundai equipment, and its authorized dealers, whose prices CJ is able to undercut by fraudulently selling Grey Market Machines not warranted by Hyundai.

**ANSWER:** CJ denies all of the allegations of Paragraph 47.

48. Hyundai U.S.A. has no adequate remedy at law for the above immediate and continuing harm, Moreover, this harm will have a negative effect on interstate commerce as Hyundai U.S.A.'s machines are in all 50 states, including Illinois.

**ANSWER:** CJ denies all of the allegations of Paragraph 48.

WHEREFORE, CJ prays for entry of judgment in its favor and against Hyundai USA dismissing Count III of the Amended Complaint.

## COUNT IV—ILLINOIS ANTI-DILUTION STATUTE

49. Hyundai U.S.A. realleges and incorporates the above paragraphs as fully set forth herein.

**ANSWER:** CJ realleges its answers to Paragraphs 1-48 as and for its answer to Paragraph 49.

50. The Hyundai and Hyundai U.S.A. trade name and mark are "famous" as defined by 765 ILCS 1036/65.

**ANSWER:** CJ is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 50, therefore it denies them.

51. In violation of 765 ILCS 1036/65, CJ's knowing and willful sales and attempted unauthorized sales of Grey Market Machines to unsuspecting consumers in Illinois has injured Hyundai U.S.A.'s reputation and diluted the distinctive quality of Hyundai U.S.A.'s trade name and mark. Hyundai U.S.A. sells and markets its machines in part based on a comprehensive warranty, which does not apply to the Grey Market Machines.

**ANSWER:** CJ denies all of the allegations of Paragraph 51.

52. Although physically similar to legitimate Hyundai equipment, have counterfeit serial numbers and are not covered under warranty in the United States and thus are materially different from legitimate Hyundai U.S.A. machines, which have warranty protection and correct and legitimate serial numbers.

**ANSWER:** CJ denies all of the allegations of Paragraph 52.

53. As a result of CJ's continued sales of Grey Market Machines, Hyundai U.S.A. has suffered and will continue to suffer irreparable harm to its reputation and dilution of the distinctive quality of Hyundai U.S.A.'s trade name and mark with both its customers, who confuse the Grey Market Machines for legitimate warranted Hyundai equipment, and its authorized dealers, whose prices CJ is able to undercut by fraudulently selling Grey Market Machines not warranted by Hyundai.

**ANSWER:** CJ denies all of the allegations of Paragraph 53.

54. Hyundai U.S.A. has no adequate remedy at law for the above immediate and continuing harm.

**ANSWER:** CJ denies all of the allegations of Paragraph 54.

WHEREFORE, CJ prays for entry of judgment in its favor and against Hyundai USA dismissing Count IV of the Amended Complaint.

### COUNT V - ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICE ACT

55. Hyundai U.S.A. realleges and incorporates the above paragraphs as fully set forth herein.

**ANSWER:** CJ realleges its answers to Paragraphs 1-54 as and for its answer to Paragraph 55.

56.   CJ's knowing and continued unauthorized sales and attempted sales of Grey Market Machines, as legitimate Hyundai U.S.A. equipment, to unsuspecting Illinois consumers has created a substantial likelihood of confusion and caused mistake and deception in Illinois consumers' minds because the Grey Market Machines, although physically similar to legitimate Hyundai equipment, have counterfeit serial numbers and are not covered under warranty in the United States and thus are materially different from legitimate Hyundai U.S.A. machines, which have warranty protection and correct and legitimate serial numbers. This knowing and willful conduct constitutes deceptive trade practices within the meaning of Section 2 of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2.

**ANSWER:**   CJ denies all of the allegations of Paragraph 56.

57.   As a result of CJ's continued sales of Grey Market Machines, Hyundai U.S.A. has suffered and will continue to suffer irreparable harm to its goodwill and reputation with both its customers, who confuse the Grey Market Machines for legitimate warranted Hyundai equipment, and its authorized dealers, whose prices CJ is able to undercut by fraudulently selling Grey Market Machines not warranted by Hyundai. Hyundai U.S.A. has no adequate remedy at law for the above immediate and continuing harm.

**ANSWER:**   CJ denies all of the allegations of Paragraph 57.

WHEREFORE, Johnson prays for entry of judgment in its favor and against Hyundai dismissing Count V of the Amended Complaint.

## COUNT VI - UNJUST ENRICHMENT

58.   Hyundai U.S.A. realleges and incorporates the above paragraphs as fully set forth herein.

**ANSWER:**   CJ realleges its answers to Paragraphs 1-57 as and for its answer to Paragraph 58.

59.   By knowingly and voluntarily selling Grey Market Machines, without authorization, as legitimate machines covered under warranty, CJ used Hyundai U.S.A.'s trade name and mark and accepted the benefits of Hyundai U.S.A.'s trade name and mark.

**ANSWER:**   CJ denies all of the allegations of Paragraph 59.

      60.    It is inequitable to allow CJ to retain the benefits and profits it obtained from its knowing abuse of Hyundai U.S.A.'s trade name and mark without payment to Hyundai U.S.A.

      **ANSWER:**   CJ denies all of the allegations of Paragraph 60.

WHEREFORE, CJ prays for entry of judgment in its favor and against Hyundai USA dismissing Count VI of the Amended Complaint.

                                                CHRIS JOHNSON EQUIPMENT, INC.,
                                                a Michigan corporation

                                                By: _____
                                                             One of its Attorneys

John L. Ropiequet (ARDC #2376563)
Kurt J. Heinz (ARDC #3127999)
William J. Anaya (ARDC #6180020)
Arnstein & Lehr LLP
120 S. Riverside Plaza, Suite 1200
Chicago, IL 60606
312-876-7100

## CERTIFICATE OF SERVICE

I, John L. Ropiequet, hereby certify that on July 20, 2006 I electronically filed Defendant's Answer to Amended Complaint for Preliminary Injunction, Permanent Injunction and Further Relief with the Clerk of the Court using the CM/ECF system which will send notification of such filing to:

>Frederic A. Mendelsohn
>Aaron H. Stanton
>Burke, Warren, MacKay & Serritella, P.C.
>330 North Wabash
>22nd Floor
>Chicago, Illinois  60611


/s/ John L. Ropiequet

1079508_1