**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **HYUNDAI CONSTRUCTION EQUIPMENT U.S.A., INC.,** an Illinois Corporation,<br><br>　　　　　**Plaintiff,**<br><br>　　v.<br><br>**CHRIS JOHNSON EQUIPMENT, INC.,** a Michigan Corporation,<br><br>　　　　　**Defendant.** | **Case No. 06 C 3238**<br><br>**Hon. Harry D. Leinenweber** |

## MEMORANDUM OPINION AND ORDER

### I.　BACKGROUND

　　The Plaintiff, Hyundai Construction Equipment U.S.A., Inc. (hereinafter, "Hyundai" or "Hyundai USA"), is the exclusive distributor of new Korean manufactured Hyundai heavy construction equipment in the United States and Canada. It is the wholly owned subsidiary of Hyundai Heavy Industries Co., Ltd., located in South Korea, which manufactured the equipment it distributes. The Defendant, Chris Johnson Equipment, Inc. (hereinafter, "Johnson"), is a heavy machinery broker specializing in the sale of construction equipment such as wheel loaders and excavators. Johnson locates such equipment in a variety of ways: attendance at auctions, unsolicited proposals, job-site inquires, and foreign travel. Johnson promotes his business through trade publication advertising and through personal contacts. Between 2004 and 2006 Johnson was offered for

purchase in the "gray market" new and used Hyundai wheel loaders and excavators which were manufactured in Ulsan, Korea for the Korean and Chinese markets. "Gray Market" goods include products with legitimate trademarks that are manufactured outside the United States for sale and use abroad, but are imported without permission of the manufacturer or the United States distributor. *Phillip Morris, Inc. v. Allen Distributors, Inc.*, 48 F.Supp.2d 844, 849-50 (S.D.Ind., 1999). Johnson imported a total of 23 of these new and used Hyundai wheel loaders and excavators. According to Hyundai each of the machines differed materially from the machines that Hyundai manufactures for sale in the United States and Canada. Hyundai further claims that Johnson did not have authority to sell any machines and specifically had no authority to sell machines that it contends were purchased and sold in the gray market.

Based on the foregoing, Hyundai has filed a six-count Complaint in which it asks for injunctive and other relief. The six counts are: (1) violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (federal unfair competition); (2) federal common law trademark infringement; (3) violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c) (federal dilution); (4) violation of the Illinois anti-dilution provision of the Illinois Trademark Act, 765 ILCS 1036/1, *et seq.*; (5) violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1, *et seq.*; and (6) Illinois common law unjust enrichment. Both parties have moved for Summary Judgment.

**II. DISCUSSION**

The gravamen of Hyundai's case against Johnson is its contention that the importation of equipment intended for sale in foreign markets that is different from the equipment it sells in the United States and Canada amounts to unfair competition in violation of Section 43(a) of the Lanham Act. Johnson's main defense is that there was no consumer confusion with respect to any of the Hyundai equipment it sold because all of its buyers of the equipment were sophisticated; knew that they were intended for sale in foreign markets; knew that they differed from the equipment Hyundai sold in the United States; knew there was no Hyundai warranty; and knew that Johnson was not an authorized Hyundai dealer, and they purchased the equipment anyway because of the low prices Johnson charged. Johnson also claims that Hyundai U.S.A., the Hyundai exclusive seller, at the time of Johnson's purchase and sale of the equipment, did not hold rights to the Hyundai trademark in the United States. Hyundai, in response, claims that consumer confusion is presumed where the case involves gray market goods that have material differences and one does not have to hold rights to the trademark to bring an unfair competition claim.

With respect to standing question under Section 43(a) of the Lanham Act the courts have held that one need not be the owner of a federally registered trademark to have standing if there is a likelihood that such owner will suffer damage as a result of a defendant's action. *Quabaug Rubber Co. v. Fabiano Shoe Co., Inc.*,

567 F.2d 154, 160 (1st Dist., 1977). The reason is that the primary purpose of the Lanham Act is to protect consumers and the dispositive question is whether the plaintiff "has a reasonable interest" to protect against false advertising. Hyundai spends large amounts of money in advertising and promoting Hyundai products from which Johnson benefitted. In addition, Johnson's sale could well be at the expense of Hyundai and its authorized dealers. Some of its customers gave as their reason for purchasing from Johnson the lower prices charged. Obviously, loss of sales to its distributors could lead, as Hyundai argues, to loss of the goodwill of Hyundai. The fact that Hyundai U.S.A.'s parent may have the right to sell goods in the American market likewise does not prevent Hyundai U.S.A. from having a protectable interest. A similar question was presented in the case of *NEC Electronics v. CAL Circuit Abco*, 810 F.2d 1506 (9th Cir., 1987) where the Japanese parent was selling identical goods in the United States contrary to its agreement with its subsidiary. The court reasonably held that there could be no consumer confusion thus no violation of the Lanham Act. Obviously, if the parent was palming off gray market goods that were materially different there could well be a Lanham Act violation.

The second issue raised by the motion is whether Hyundai must prove actual customer confusion or is potential confusion sufficient to provide a violation of the Lanham Act. While the Lanham Act does not block the importation and sale of genuine goods under their real trademarks, it does forbid importation and sale if the domestic and

foreign products are materially different.  The reason for this is that the sale of a foreign product disguised as a domestic product has the potential to mislead or confuse consumers about the nature or quality of the product they are buying if different from the domestic product.  In the former situation the customer cannot be confused as to the quality of the imported goods because they are identical to the domestic products.  *NEC Electronics v. CAL Circuit Abco*, 810 F.2d 1506 (9th Cir., 1987).  In the latter situation, the consumer who is buying a trademarked product in the United States is certainly entitled to assume that it is identical to the domestic product. *R.J. Reynolds Tobacco Co. v. Cigarettes CheaperA*, 462 F.3d 690, 700 (7th Cir., 2006).

Therefore, the first inquiry is whether the products are identical or have any material differences.  If there are differences between the gray market goods and the authorized domestic product, it is incumbent upon the importer to show that the differences are not of the kind that consumers on average, would likely consider in purchasing the product.  *Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.*, 982 F.2d 633, 641 (1st Cir., 1992).  Hyundai says that there are eight material differences between the equipment imported by Johnson and the equipment Hyundai sells in the United States and Canada:  (1) the imported goods had altered and/or defaced serial numbers; (2) were sold without the standard warranty available in the United States; (3) 10 of the 23 units had safety, operation, and maintenance instructions and safety decals in Korean rather than

in English; (4) two units had non-EPA complaint engines; (5) five units had different controllers; (6) eight units had non-state-of-the art engines; (7) five units had unit numbers not authorized for sale in the North American market; and (8) five units had incorrect weights listed on the serial number plates.  For a start absence of or a different warranty has been held to be a material difference. *Bourdeau Bros., Inc. v. International Trade Com'n*, 444 F.3d 1317, 1325 n. 3 (Fed.Cir., 2006).  However, we need not spend a lot of time analyzing these differences because Johnson does not take major issue with these differences or their materiality but contends that his customers were well aware of what they were purchasing.  Some (but not all) customers were deposed and those that were did agree with this view.

Johnson's contention that Hyundai must prove actual confusion does not appear to be the case based on *Societe Des Produits Nestle, S.A.* and Johnson has cited no case in support of his view.  As stated by the Seventh Circuit in *R.J. Reynolds*, the question is whether there is a "potential to mislead or confuse" and not whether there is actual confusion and the question calls for an objective answer, *i.e.*, the average consumer.  While it may have been Johnson's intention to warn all of his customers that they were buying the Korean version of the equipment this would not protect subsequent customers who may purchase the equipment from Johnson's customers.  Thus, the record here conclusively establishes that there are material differences between the equipment Johnson imported and the

equipment distributed by Hyundai in the United States and Canada. Therefore, Hyundai has proved a violation of Section 43(a) of the Lanham Act as stated in Count I. For the same reason Hyundai has proved a violation of the Illinois Deceptive Trade Practices Act which is patterned after Section 43(a) of the Lanham Act. *M-F-G Corp. v. EMRA Corp.*, 626 F.Supp. 699 (N.D.Ill., 1985). The case of *American Circuit Breaker Corp. v. Oregon Breakers Inc.*, 406 F.3d 577, 585-86 (9th Cir., 2005), cited by Johnson, is distinguishable. In that case, the parties stipulated that the alleged infringing gray market good was identical to the domestic good. Consequently, it was incumbent on the plaintiff there to prove consumer confusion.

Hyundai does not appear to contest Johnson's Motions with respect to the remaining counts. It's Brief in support of its Motion and against Johnson's Motion is devoted solely to the Section 43(a) claim in Count I. Probably with good reason. The failure to have a property interest in the trademark at the time of the offending conduct would appear to prevent Hyundai from proceeding on its remaining counts which all depend on the Plaintiff owning the trademark in question. For example, Count II alleges common law trademark infringement. The Plaintiff does not own the trademark. Count III alleges a claim under Section 43(c)(15 U.S.C. § 1125(c)) for dilution. However the statute itself limits relief to "the owner of a famous mark" and Hyundai U.S.A. at the time of the offensive conduct was not the owner. Count IV alleges a claim under the Illinois Anti-Dilution Act and must be dismissed for the same reason.

- 7 -

The final count seeks to recover under unjust enrichment. Johnson has moved for summary judgment on the grounds that there is no deception in the record. Hyundai does not argue against the motion.

Hyundai asks the Court to find that this is an exceptional case justifying an award of attorneys' fees and costs under 15 U.S.C. § 1117. In order to obtain such an award, the Court must find "bad faith, fraud, malice, or knowing infringement." The case of *Ferrero U.S.A., Inc. v. Ozak Trading, Inc.*, 952 F.2d 44, 47-48 (3rd Cir., 1991) is similar to this case because it also involved the importation of gray market goods (TicTac candy) where the imported goods were materially different but not counterfeit. The court reversed a trial court finding of exceptional case, noting that there was no attempt on the part of the defendant to deceive anyone. Similarly here, Johnson took apparent pains to inform his customers that they were getting exactly what they were getting: a Hyundai product without a warranty that had been purchased overseas. Thus, while consumer confusion can be presumed so as to be a Lanham Act violation, there was no actual confusion shown which could have made it exceptional. The Court therefore declines to find that this is an exceptional case within the meaning of 15 U.S.C. § 1117.

### III. **CONCLUSION**

In summary the Court rules as follows:

1. Count I. Hyundai's Motion for Summary Judgment is granted. Johnson's Motion for Summary Judgment is denied.

2. Counts II, III, and IV. Johnson's Motions for Summary Judgment are granted. Hyundai's Motions for Summary Judgment are denied.

3. Count V. Hyundai's Motion for Summary Judgment is granted. Johnson's Motion for Summary Judgment is denied.

4. Count VI. Johnson's Motion for Summary Judgment is granted. Hyundai's Motion for Summary Judgment is denied.

Having granted Hyundai's Motion for Summary Judgment on Counts I and V the Court now requests Hyundai to submit its Request for Relief within seven (7) days. Johnson may respond to the Request within seven (7) days.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

**DATE:** September 10, 2008